[Cite as *State v. Whitehead*, 2022-Ohio-479.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : Case No. 20CA3931

    v. :

ERNEST WHITEHEAD, : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant. :

_____

APPEARANCES:

Rick L. Ferrara, Cleveland, Ohio, for appellant.[1]

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:2-11-22
ABELE, J.

    **{¶1}** This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Ernest Whitehead, defendant below and appellant herein guilty of two first-degree felonies: (1) trafficking in heroin in violation of R.C. 2925.03(A)(2),[2] and (2) possession of heroin in violation of

---

    [1] Different counsel represented appellant during the trial court proceedings.

    [2] The trial court's sentencing entry and the verdict form contain a clerical error. Both recite the offense as R.C. 2925.03(A)(1). The trial court, however, amended the indictment to charge R.C. 2925.03(A)(2).

R.C. 2925.11(A).  The trial court merged the possession offense with the trafficking offense and

sentenced appellant to serve a six-year prison term.

{¶2}    Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY
INEFFECTIVE ASSISTANCE BY FAILING TO MOVE FOR
DISMISSAL ON SPEEDY TRIAL GROUNDS, FAILING TO
FILE A MOTION TO SUPPRESS, FAILING TO FILE A
MOTION FOR SEPARATE TRIALS, AND FAILING TO
PROVIDE ADEQUATE DEFENSE AT TRIAL."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED PLAIN ERROR IN
AMENDING THE INDICTMENT PRIOR TO TRIAL TO
ALTER COUNT ONE BY CHANGING AN ELEMENT OF THE
OFFENSE."

THIRD ASSIGNMENT OF ERROR:

"THE STATE OF OHIO PRESENTED INSUFFICIENT
EVIDENCE TO SUPPORT A CONVICTION FOR DRUG
TRAFFICKING, DRUG POSSESSION, AND POSSESSION OF
CRIMINAL TOOLS."

FOURTH ASSIGNMENT OF ERROR:

"THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT
WARRANT CONVICTION ON ANY COUNT."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ACTED CONTRARY TO LAW IN
IMPOSING A SIX YEAR TERM OF MANDATORY
IMPRISONMENT."

{¶3}     During the late-night hours of August 10, 2018, Ohio State Highway Patrol Trooper Nick Lewis stopped a black sport-utility vehicle for following a vehicle too closely, for making an unexpected lane change, and for driving 40 miles per hour in a 55 mile-per-hour speed zone.  During the ensuing traffic stop, Lewis and another trooper discovered approximately 57 grams of heroin stuffed inside the lining of the backside of the driver's seat.  The troopers questioned the three occupants, Carvion McKee, Henry Deandre Smith, and appellant and all stated that they did not know that the vehicle contained heroin.  The troopers then allowed the occupants to leave and advised them that the prosecutor's office likely would present the matter to a grand jury.

{¶4}     On August 22, 2019, a Scioto County Grand Jury returned indictments that charged appellant, Smith, and McKee with trafficking in heroin in violation of R.C. 2925.03(A)(1), possessing heroin in violation of R.C. 2925.11(A), and possessing criminal tools in violation of R.C. 2923.24(A).  Appellant and Smith entered not guilty pleas.[3]

{¶5}     The morning of trial, the state filed a motion to amend the indictment.  The state asserted that the indictment incorrectly recited the trafficking offense in terms of R.C. 2925.03(A)(1), rather than R.C. 2925.03(A)(2).  The prosecutor explained that the amendment did not change the name of the offense or the penalty, and that the case "always [has] been a transport, deliver, shipment type of case."

{¶6}     Appellant's counsel did not object to the state's motion to amend the indictment and agreed that the amendment would not change appellant's defense strategy.  The court asked appellant whether he concurred, and he responded, "[y]es."

---

[3] According to the state, McKee later entered a guilty plea.

{¶7}     Smith's counsel likewise stated that "the case laws [sic] clear on this."  Smith's counsel further stated, "[w]e can tell by reading the discovery that it was a transport * * * case." Smith also indicated that the amendment would not change the defense strategy.  The court thus granted the state's motion to amend the indictment to allege a violation of R.C. 2925.03(A)(2).

At trial, Trooper Lewis testified that around 11:30 p.m. on August 10, 2018 he noticed a black vehicle "tailgating a lead vehicle."  Lewis followed the vehicle and noticed a change from the right lane to the left lane and speed at 40 miles per hour in a 55-mile-per-hour zone.  At this point, Lewis stopped the vehicle and approached the driver to ask for identification.  McKee sat in the driver's seat, Smith, who had rented the vehicle, sat in the front passenger seat, and appellant in the left middle row, directly behind McKee.  Lewis learned that all three occupants are Michigan residents.

{¶8}     After Trooper Lewis asked McKee to exit the vehicle, they walked to the cruiser. Lewis stated that he asked McKee to exit the vehicle as part of his drug interdiction protocol and to check on the status of his well-being.  Lewis related that, when a vehicle is traveling 40 miles per hour in a 55-mile-per-hour zone, "there's typically a – a problem."  Lewis indicated he wanted McKee out of the vehicle so Lewis could "try to figure out what was going on with him." Lewis explained he "had planned on placing [McKee] in the back of the cruiser while [he] checked [McKee's] driver's license and just talk[ed] to him about why he was driving erratically."  Because highway patrol policy is to conduct pat-down searches of individuals before placing them in cruisers, Lewis asked McKee if he could conduct a pat-down search. Lewis indicated that McKee agreed to the search.

{¶9} As Trooper Lewis started to conduct the pat-down search, he told McKee to keep his hands out of his pockets. McKee, however, disobeyed that instruction and "the first thing [McKee] does is takes his left hand[,] puts it in his pocket and pulls out something in his – his fist." Lewis noticed that McKee's fist was "balled up." Lewis asked McKee what he had in his hand and, rather than answering, McKee "shove[d his hand] back down the front of his pants." Lewis then "grab[bed]" McKee and "put him against the – the rear of the vehicle." As Lewis handcuffed McKee, he noticed "a plastic baggie fall[] from his chest to the ground." The plastic bag contained "a small amount of marijuana residue." At this point, Lewis requested backup assistance.

{¶10} After Ohio State Highway Patrol Trooper Matt Lloyd responded to the call for backup, he removed the front-seat passenger, Smith, patted him down for weapons, and placed him in the rear of Trooper Lewis' cruiser with McKee. Then, the troopers removed appellant, patted him down, and placed him in the rear of Lloyd's cruiser. Lewis explained that the troopers removed the occupants because they knew that they would search the vehicle based upon the discovery of marijuana residue.

{¶11} As Trooper Lewis began to search the vehicle, he also noticed what appeared to be crack cocaine in the front passenger seat. A field test confirmed their suspicion and indicated the substance to be crack cocaine.

{¶12} Trooper Lewis also stated that Trooper Lloyd searched the area where appellant had been seated and noticed that a trim piece on the driver's seat backrest appeared to have "been tampered with." Lloyd pulled the trim piece "back a little bit" and discovered a plastic bag in the back of the driver's seat that contained 57 grams of heroin worth around $6,000.

Lewis also testified that 57 grams of heroin is not an amount to suggest personal use and, instead, "would be considered a trafficking amount."

{¶13} During Trooper Lewis' testimony, the state played a video of the traffic stop that included the vehicle search and the conversation between McKee and Smith while seated in the cruiser. McKee, who was extremely talkative, complained that the handcuffs hurt his wrists and, as Trooper Lloyd started to search the area where he found the heroin, McKee began to yell for the trooper. After the troopers discovered the heroin, Lewis read Smith and McKee the *Miranda* warnings. Smith asked why they were being arrested and Lewis informed Smith and McKee that they had discovered heroin in the vehicle. Smith and McKee both responded with disbelief. Smith claimed he did not know anything about the heroin, that the vehicle is a rental car, that he is a truck driver, and that the three occupants intended to visit "some females" in Kentucky. Lewis agreed with Smith that the vehicle is a rental car, but pointed out to Smith and McKee that Smith rented the vehicle about one week earlier. McKee likewise denied any knowledge about the heroin and expressed surprise about its discovery. McKee also repeated Smith's statements that they intended to visit "some females" and that Smith is a truck driver.

{¶14} The troopers then removed Smith from the back of Trooper Lewis' cruiser and placed appellant in the back seat with McKee. McKee continued to express surprise to appellant that the troopers discovered heroin and he stated he did not know how heroin ended up in the vehicle. McKee told appellant that they were merely traveling to Kentucky to visit "some females" and did not understand how they ended up in this predicament.

{¶15} When the troopers spoke with appellant, appellant also claimed he knew nothing about the heroin in the back of the driver's seat, even though the heroin had been stuffed inside

the seat-back directly in front of him. Trooper Lloyd testified he discovered a gap in the back of the driver's seat that "easily pull[ed] back," and inside he discovered a plastic bag that contained heroin.

{¶16} The state also presented the testimony of Josie Keating, a rental car agency representative who rented the vehicle to Smith. Keating stated that the rental car would have undergone an inspection before Smith took possession, and if the vehicle had any damage, it would have been noted on the inspection report. Keating testified that Smith's inspection report indicated "no damage documented." Keating also explained that Smith rented the vehicle on July 31, 2018, was scheduled for return on August 8, but did not return the vehicle until August 25. Also, during the time that Smith had the rental vehicle the mileage increased by 4,412 miles.

{¶17} Scioto County Sheriff's Captain James Carter testified that he oversees the jail operations, including the telephone calls. Carter obtained recordings of two phone calls that Smith made while in jail and the state played portions of each at trial. During the first call, Smith spoke with his grandfather who stated that he had spoken with Smith's lawyer and, when asked if Smith had a job, the grandfather told the lawyer that Smith did not. Smith did state that when he returned home he planned to apply for a job "do[ing] a line haul for Chrysler." During the second call, Smith spoke with an individual he referred to as "cuz." Smith informed the individual he had been arrested and was being held in Portsmouth. Smith stated that when Trooper Lewis "pulled my man over who was driving," Smith "was coming down to your crib." After Captain Carter's testimony, the state rested.

{¶18} At this juncture, appellant and Smith moved for Crim.R. 29(A) judgments of acquittal and asserted that the state failed to present sufficient evidence to show that they knew

about the heroin in the vehicle or that they constructively possessed the heroin. The trial court overruled the motions.

{¶19}    On October 8, 2020, the jury found appellant guilty of trafficking and possessing heroin, both in an amount equal to or exceeding 50 grams. The jury also found appellant not guilty of possessing criminal tools.

{¶20}    On October 30, 2020, after the trial court merged the possession and trafficking counts, the state elected to proceed to sentencing on the trafficking offense, and the trial court sentenced appellant to serve six years in prison. This appeal followed.

I

{¶21}    In his first assignment of error, appellant asserts that his trial counsel failed to provide the effective assistance of counsel for the following reasons: (1) counsel failed to file a motion to dismiss on speedy trial grounds; (2) counsel failed to file a motion to suppress evidence; (3) counsel failed to file a motion to separate appellant's trial from Co-defendant Smith's trial; and (4) counsel committed cumulative errors that resulted in prejudicial error.

A

{¶22}    The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014)

(Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶23}   To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial.  *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85.  "Failure to establish either element is fatal to the claim."  *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.  Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶24}   The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273.  Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'"  *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

{¶25}   Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."'"" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly,

"[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).

{¶26} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶27} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 91 (prejudice component requires a "but for" analysis). "'[T]he question is

whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695. Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002. As we have repeatedly recognized, speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (a purely speculative argument cannot serve as the basis for an ineffectiveness claim). We further note that counsel's failure to file a futile or frivolous motion "'cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial.'" *State v. Waters*, 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109, ¶ 12, quoting *State v. Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 33.

B

{¶28} Appellant first argues that his trial counsel's failure to file a motion to dismiss on speedy trial grounds constitutes ineffective assistance. Appellant asserts that, before the General Assembly tolled the speedy trial time provisions during the COVID-19 state of emergency, 200 speedy trial days had elapsed since his August 22, 2019 indictment. He contends that, after the

tolling period ended on July 30, 2020, 201 speedy trial days accrued. He thus asserts that 401 speedy trial days elapsed between the date of his indictment and his trial date.

{¶29} The state contends that, between appellant's August 22, 2019 indictment and his October 5, 2020 trial, 252 speedy trial days elapsed. The state thus asserts that appellant's statutory speedy trial rights had not been violated.

{¶30} Criminal defendants are guaranteed the right to a speedy trial under the Ohio and United States Constitutions. Ohio Constitution, Article I, Section 10; Sixth Amendment to the U.S. Constitution. "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *accord State v. Triplett*, 78 Ohio St.3d 566, 568, 679 N.E.2d 290 (1997).

{¶31} In Ohio, R.C. 2945.71 to 2945.73 codify the state and federal constitutional speedy trial guarantees. *State v. Martin*, 156 Ohio St.3d 503, 2019-Ohio-2010, 129 N.E.3d 437, ¶ 15; *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 11. R.C. 2945.71(C)(2) requires the state to try a person charged with a felony "within two hundred seventy days after the person's arrest."

{¶32} "When computing speedy trial time, the day of arrest is not counted." *State v. Cimpaye*, 2d Dist. No. 28304, 2020-Ohio-2740, 154 N.E.3d 415, ¶ 17; *accord State v. McIntyre*, 4th Dist. Ross No. 15CA3524, 2016-Ohio-5363, ¶¶ 26-27; *State v. Evans*, 11th Dist. Trumbull No. 2003-T-0132, 2005-Ohio-1787, ¶ 34 (speedy trial rights not triggered until arrest). If a

person is held in jail awaiting trial, each day in jail counts as three days for purposes of calculating the 270-day period specified in R.C. 2945.71(C)(2). R.C. 2945.71(E).

{¶33} R.C. 2945.72 specifies the circumstances that may toll the running of the speedy trial clock. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 24. As relevant in the case at bar, R.C. 2945.72(H) states that "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion" extends the time within which the state must try a defendant.

{¶34} In the case sub judice, after our review we do not agree with appellant that 401 speedy trial days elapsed. Appellant's calculation includes the time period between the date of his indictment and the date of his arrest. However, as the foregoing cases explicitly indicate, the speedy trial clock starts after a defendant's arrest.

{¶35} In the case sub judice, appellant's arrest occurred on July 6, 2020. The speedy trial clock, therefore, started on July 7, 2020, the date after appellant's arrest. Starting with July 7, (1) 25 days elapsed during July, (2) 31 days elapsed in August, (3) 30 days elapsed in September, and (4) 4 days elapsed in October. The number of days add up to 90. Because appellant remained jailed throughout those 90 days, under the triple-count provision 270 speedy trial days elapsed between July 7 and October 5.

{¶36} However, because the first 25 days the speedy trial clock was tolled until July 30, 2020 due to the COVID-19 state of emergency, time was tolled in appellant's case until July 31, 2020. Subtracting the July tolling period of 24 days (July 7-30) establishes that appellant's October 5, 2020 trial occurred within the 270-day time frame set forth in R.C. 2945.71(C)(2).

{¶37}     Additionally, appellant's speedy trial clock was further tolled on September 25, 2020 when the trial court granted the state's motion to continue.  The court stated in its entry that granted the continuance that the speedy trial provisions were tolled until the trial begins.  Hence, we conclude that no violation of appellant's speedy trial rights occurred.

{¶38}     Consequently, trial counsel did not provide ineffective assistance of counsel for the failure to file a motion to dismiss on speedy trial grounds when the motion would not have had any reasonable probability of success.

C

{¶39}     Appellant next argues that trial counsel's failure to file a motion to suppress evidence derived from the vehicle stop and search of the driver constitutes ineffective assistance of counsel.  Appellant contends that a reasonable probability exists that the trial court would have suppressed the evidence if counsel had filed a motion to suppress.  Appellant asserts that a motion to suppress would have succeeded because (1) Trooper Lewis did not have any cause or justification to stop the vehicle, and (2) Trooper Lewis lacked any suspicion that McKee was armed and dangerous in order to justify the pat-down search.

{¶40}     Initially, we point out that trial counsel's "'failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'"  *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *accord State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 126.  "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, citing *State v.*

*Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35. "'Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.'" *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 208, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). "'Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.'" *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28, quoting *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, ¶ 13; *see State v. Waters*, 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109, ¶ 12, quoting *State v. Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 33 ("'[t]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial'").

{¶41}     In the case at bar, as we explain below, we do not believe that appellant has shown a valid basis to suppress the evidence discovered during the traffic stop. Even if some evidence in the record might arguably support a suppression motion, trial counsel reasonably could have decided that filing the motion would have been a futile act. Appellant has not, therefore, shown that trial counsel violated an essential duty by failing to file a motion to suppress evidence.

{¶42}     The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *State v. Gullett*, 78 Ohio App.3d 138, 143, 604 N.E.2d 176 (1992).

"[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98.

{¶43} A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Prouse*, 440 U.S. at 653. Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Whren*, 517 U.S. at 810. An officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred. *Id.* (citations omitted); *accord State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23; *Dayton v. Erickson*, 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091 (1996). Law enforcement officers also may stop a vehicle if they have reasonable suspicion "that criminal activity '"may be afoot."'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *accord State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 19 (officer may "make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity").

{¶44} Courts that review whether an officer had a reasonable suspicion or probable cause to stop a vehicle must consider the "totality of circumstances" as "viewed through the eyes

of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The totality-of-the-circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273, quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶45} In the case sub judice, appellant argues that the trooper lacked reasonable suspicion to stop the vehicle.[4] Appellant asserts that, because the trooper did not articulate any facts to suggest that the driver of the vehicle committed a traffic violation, the trooper lacked any reasonable suspicion to stop the vehicle.

{¶46} Law enforcement officers need not necessarily observe a distinct traffic violation in order to conduct an investigative stop of an automobile. *See State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 21-24. In *Hawkins*, the court held that an officer possessed reasonable suspicion to stop a vehicle when the color of the vehicle did not match the color listed on the vehicle's registration and when the officer stated that, "in his experience, the color discrepancy could signify that the vehicle either was stolen or had an illegal license plate." *Id.* at ¶ 24. The court explained that even though "color discrepancy" may not be a crime and could have "an innocent explanation," this color discrepancy may nevertheless give an officer reasonable suspicion to believe that criminal activity is afoot. *Id.* at ¶ 23. The court reasoned:

---

[4] Passengers in a vehicle, as well as the driver, have standing to challenge the constitutionality of a traffic stop. *Brendlin v. California*, 551 U.S. 249, 259, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); *State v. Carter*, 69 Ohio St.3d 57, 63, 630 N.E.2d 355 (1994).

> To assign noncriminal behavior no weight would "seriously undercut the 'totality of the circumstances' principle which governs the existence *vel non* of 'reasonable suspicion.'" [*Arvizu*, 534 U.S.] at 274-275. Behavior and circumstances that are noncriminal by nature may "be unremarkable in one instance * * * while quite unusual in another." *Id.* at 276, 122 S.Ct. 744. An officer is "entitled to make an assessment of the situation in light of his specialized training and familiarity with the customs of the area's inhabitants." *Id.*

*Id.* at ¶ 23. Thus, the totality of the circumstances inquiry allows officers to consider all of the surrounding circumstances -– even seemingly innocuous ones -- when determining whether they have reasonable suspicion to believe that criminal activity may be afoot. *See Arvizu*, 534 U.S. at 275-276 (a vehicle's deceleration may give an officer reasonable suspicion to stop a vehicle depending upon the totality of the circumstances present in the case).

{¶47}    In the case sub judice, Trooper Lewis articulated several factors to support a reasonable belief that criminal activity could have been afoot at the time in question. First, Lewis noted that the vehicle was a rental car and in his experience, individuals who transport drugs commonly use rental cars to avoid detection. Additionally, Lewis observed that the vehicle in question (1) failed to maintain a safe distance from the vehicle that traveled in front of it, (2) slowed to 40 miles per hour while traveling in a 55-mile-per-hour zone, and (3) made an unexpected lane change. The totality of the circumstances, therefore, supports a finding that Lewis possessed reasonable suspicion that criminal activity may be afoot and probable cause that a traffic violation had occurred. Consequently, we do not agree with appellant that Lewis lacked a lawful basis to conduct the traffic stop. Thus, trial counsel's failure to file a motion to suppress evidence does not constitute ineffective assistance of counsel.

{¶48}    Appellant next contends that his trial counsel's failure to file a motion to suppress evidence based upon Trooper Lewis' pat-down search of McKee constitutes ineffective

assistance. Appellant, however, lacks standing to challenge the search of McKee. *Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ("'Fourth Amendment rights are personal rights which * * * may not be vicariously asserted'"). Instead, "defendants may only claim the benefits of the exclusionary rule if their Fourth Amendment rights have been violated." *State v. Horsley*, 4th Dist. Scioto No. 12CA3473, 2013-Ohio-901, ¶ 16.

**{¶49}** In view of the fact that appellant lacks standing to challenge the propriety of Trooper Lewis' search of the driver, trial counsel's failure to file a motion to suppress evidence on this basis does not constitute ineffective assistance.

**{¶50}** Consequently, we disagree with appellant that trial counsel was ineffective for failing to file a motion to suppress. Instead, trial counsel reasonably could have determined that filing a suppression motion would have been a futile or frivolous act.

D

**{¶51}** Appellant next asserts that his trial counsel's failure to file a motion to separate the joint trial from Co-defendant Smith constitutes ineffective assistance. Appellant contends that evidence of Smith's wrongdoing led the jury to convict appellant. Appellant points out that Smith rented the vehicle, had dominion and control of the vehicle for approximately one month, and the evidence "showed only that Appellant was in the backseat of the car." Appellant continues:

> [Appellant] didn't drive it. No forensics pointed to him having touched heroin or other drugs. No drugs were found in his seat. Appellant's natural defense was to blame other people–namely Smith–and disassociate from him entirely. That could not happen with a joined trial.

Appellant thus argues that his trial counsel should have filed a motion to separate the trials and that the failure to do so amounts to ineffective assistance of counsel.

{¶52}    Crim.R. 8(B) specifies that multiple defendants may be joined in a single indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct."  As a general rule, the law favors joinder of defendants and the avoidance of multiple trials.  *E.g., State v. Gordon,* 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 18.  Joint trials "conserve[] judicial and prosecutorial time, lessen[] the not inconsiderable expenses of multiple trials, diminish[] inconvenience to witnesses, and minimize[] the possibility of incongruous results in successive trials before different juries."  *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980); *accord Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts'").

{¶53}    If, however, joinder prejudices a defendant, Crim.R. 14 gives a trial court discretion to sever the trials.  Crim.R. 14 provides:  "If it appears that a defendant * * * is prejudiced by a joinder of * * * defendants * * * for trial together * * *, the court shall * * * grant a severance of defendants, or provide such other relief as justice requires."

{¶54}    To establish that a trial court's refusal to sever a trial constitutes an abuse of discretion, a defendant must establish that holding combined trials prejudiced the defendant's rights.  *Gordon* at ¶ 21*; State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992)*.*  The test is

> whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way—by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever.

*State v. Schiebel*, 55 Ohio St.3d 71, 89, 564 N.E.2d 54 (1990), quoting *United States v. Castro*, 887 F.2d 988, 996 (9th Cir. 1989. A defendant must provide "the trial court with sufficient information so that it [can] weigh the considerations favoring joinder against the defendant's right to a fair trial." *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

{¶55} We observe that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Additionally, "a trial court does not abuse its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative." *State v. Payne*, 10th Dist. Franklin App. No. 02AP–723, 2003–Ohio–4891.

{¶56} In the case sub judice, appellant contends that trial counsel's failure to request a severance allowed the jury to hear evidence of Smith's wrongdoing and that the jury may have erroneously found appellant guilty based solely upon Smith's wrongdoing. Consequently, appellant asserts that his defense theory should have been to blame Smith for the criminal acts and this could not be done without separate trials.

{¶57} After our review, we do not agree with appellant that counsel's failure to ask the trial court to sever the trials constitutes ineffective assistance. Here, appellant's argument rests upon speculation as to what might have occurred if appellant's defense strategy had been to blame Smith rather than to deny any knowledge whatsoever. Speculation is not sufficient to establish that a joint trial prejudiced a defendant.

{¶58}    Moreover, even if appellant had attempted to blame Smith, such mutually antagonistic defenses do not necessarily require a trial court to sever a trial. *See Zafiro*, 506 U.S. at 538. Instead, mutually antagonistic defense, typically warrant severance when the defenses are "irreconcilable and mutually exclusive." *State v. Walters*, Franklin App. No. 06AP–693, 2007–Ohio–5554, at ¶ 23, citing *United States v. Berkowitz* (C.A.5, 1981), 662 F.2d 1127, 1133. As the *Walters* court explained:

> The essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other. [*Berkowitz*, 662 F.2d] at 1134. "In such a situation, the co-defendants do indeed become the government's best witnesses against each other. Where two defendants present defenses that are antagonistic at their core, a substantial possibility exists 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Id.*, quoting *United States v. Eastwood* (C.A.5, 1973), 489 F.2d 818, 822, n. 5, quoting *United States v. Robinson* (D.C.Cir.1970), 432 F.2d 1348, 1351.

*Walters* at ¶ 23. Thus, a defendant is not entitled to severance based upon mutually antagonistic defenses unless "there is a serious risk that a joint trial could compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

{¶59}    The *Zafiro* court described the type of prejudice that might warrant severance, stating, "[s]uch a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* The court further noted "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer

SCIOTO, 20CA3931

prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.*

{¶60}    In the case sub judice, appellant's assertion that the joint trial prejudiced his rights is speculative.  The record contains no evidence that appellant or Smith attempted to blame the other.  Instead, the evidence shows that appellant and Smith denied culpability.  Moreover, we see no danger that the jury found appellant guilty based solely upon the evidence that Smith rented the vehicle.

{¶61}    We further note that the trial court instructed the jury that it "must separately consider the evidence applicable to each Defendant as though he were being * * * separately tried and you must state your findings as to each Defendant uninfluenced by your verdict as to any other Defendant."  The *Zafiro* court stated that this type of instruction "suffice[s] to cure any possibility of prejudice."  *Id.* at 541.

{¶62}    Thus, even if, for purposes of argument, we agreed with appellant that trial counsel performed deficiently by failing to file a motion to sever, appellant cannot establish that he suffered prejudice as a result of counsel's decision not to seek separate trials.  Counsel, therefore, did not perform ineffectively for the failure to file a motion to sever the trials.

E

{¶63}    Appellant also contends that trial counsel failed to (1) object at trial, (2) cite appropriate authority to support his Crim.R. 29 motion for judgment of acquittal, and (3) give an effective closing argument.  Appellant claims that the combination of these failures deprived him of constitutionally effective assistance of counsel.

1

{¶64}    We first observe that the decision at trial to object, or not to object, ordinarily constitutes a question of trial strategy. *State v. Frierson*, 8th Dist. Cuyahoga No. 105618, 2018-Ohio-391, ¶ 25, citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. Accordingly, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

> Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 140.

{¶65}    In the case sub judice, we do not believe that appellant established that trial counsel "fail[ed] to use objections, despite numerous and clear reasons for doing so." *Id.* Appellant did not show that trial counsel's decisions not to object were so unreasonable as to constitute deficient performance.

2

{¶66}    Appellant also contends that trial counsel's failure to cite *State v. Criswell*, 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, to support his Crim.R. 29 motion for judgment of acquittal constitutes ineffective assistance. Appellant does not, however, precisely explain how the failure to cite this particular case prejudiced the outcome of the trial or that the trial court

would have granted his motion if trial counsel had cited the case. (See, also discussion of *Criswell infra* under appellant's third assignment of error). Appellant thus has not met his burden to establish that trial counsel provided ineffective assistance by failing to cite a specific case.

3

{¶67}     Appellant next argues that trial counsel performed ineffectively by failing to give a more effective closing argument. Once again, because appellant does not precisely explain how a different closing argument would have changed the result of the trial, appellant has not met his burden to establish that trial counsel provided ineffective assistance by failing to give a closing argument that appellant believes could have been more compelling.

4

{¶68}     Finally, appellant asserts that the cumulative effect of trial counsel's alleged deficiencies deprived him of a fair trial. However, because we did not conclude that trial counsel's performance was deficient, appellant's contention is without merit. *See State v. Webster*, 10th Dist. Franklin No. 20AP-171, 2021-Ohio-3218, ¶¶ 65-68.

{¶69}     Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶70}     In his second assignment of error, appellant asserts that the trial court plainly erred by permitting the state to amend the indictment to charge him with trafficking in violation of R.C. 2925.03(A)(2). Appellant contends that the amendment changed an element of the offense from "sell or offer to sell" to "transport."

**{¶71}** We first note that at trial, appellant and appellant's counsel explicitly agreed to the amendment. Appellant thus invited any error that may have occurred. The invited-error doctrine precludes a litigant from "'tak[ing] advantage of an error which [the litigant] invited or induced.'" *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. The doctrine generally applies "'when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed.'" *Id.*, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000). In the criminal context, the doctrine prevents a defendant from making "'an affirmative * * * decision at trial and then complain[ing] on appeal that the result of that decision constitutes reversible error.'" *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003); *accord State v. Brunner*, 4th Dist. Scioto No. 18CA3848, 2019-Ohio-3410, ¶ 15.

**{¶72}** Furthermore, assuming, arguendo, that appellant did not invite any error, as we explain below we do not believe that any error occurred. Crim.R. 7(D) provides that a court may amend an indictment "at any time before, during, or after a trial * * *, provided no change is made in the name or identity of the crime charged." Thus, an amendment is "proper when the amendment [does] not change the penalty or the degree of the offense." *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 6. Moreover, "[a]s long as the state complies with Crim.R. 7(D), it may cure a defective indictment by amendment, even if the original indictment omits an essential element of the offense with which the defendant is charged." *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, 926 N.E.2d 611, ¶ 15.

{¶73}     In the case sub judice, appellant did not argue that the amendment changed the penalty or the degree of the offense. Instead, appellant asserts that the amendment changed "the actus reus." Because appellant did not argue that the amendment changed the penalty or the degree of the offense, his second assignment of error is meritless. *See State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 70 (amendment that simply changes certain element of offense without changing the name of the offense or the penalty does not constitute an improper amendment under Crim.R. 7(D)).

{¶74}     Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## III

{¶75}     In his third assignment of error, appellant asserts that the state failed to present sufficient evidence (1) to show that he trafficked in, or possessed, the heroin discovered in the back of the driver's seat, and (2) to support a possessing criminal tools conviction.

## A

{¶76}     A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *Thompkins*, 78 Ohio St.3d at 386. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could

have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶77}    Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

B

{¶78}    Initially, we observe that, although the trial court found appellant guilty of trafficking and possessing heroin, the trial court merged the possession offense with the trafficking offense.  Thus, if sufficient evidence supports appellant's trafficking conviction, an erroneous verdict on the merged count would be harmless.  *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 73; *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990); *State v. Campbell*, 4th Dist. Vinton No. 20CA723, 2021-Ohio-2482, ¶ 46; *see State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 54 (because court does not impose sentence for merged offenses, defendant is not "convicted" of merged offenses and no "conviction" for appellate court to vacate).  Consequently, if we determine that sufficient

evidence supports appellant's trafficking conviction, we need not address appellant's sufficiency

argument regarding the possession offense.

{¶79}    R.C. 2925.03(A)(2)[5] contains the essential elements of trafficking in drugs:

> No person shall knowingly
> * * *
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶80}    Additionally, R.C. 2923.03(A)(2), Ohio's complicity statute provides, in relevant

part, that "[n]o person, acting with the kind of culpability required for the commission of an

offense, shall * * * [a]id or abet another in committing the offense."  "[T]o aid or abet is '"[t]o

assist or facilitate the commission of a crime, or to promote its accomplishment."'"  *State v.*

*McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 27, quoting *State v.*

*Johnson*, 93 Ohio St.3d 240,243, 754 N.E.2d 796 (2001), quoting Black's Law Dictionary 69

(7th Ed.1999).

{¶81}    A conviction for complicity by aiding and abetting under R.C. 2923.03(A)(2)

requires the state to prove, beyond a reasonable doubt, "that the defendant supported, assisted,

encouraged, cooperated with, advised, or incited the principal in the commission of the crime,

and that the defendant shared the criminal intent of the principal." *Johnson* at syllabus.

---

[5] The trial court's sentencing entry and verdict form apparently do not conform to the trial court's oral decision to amend the indictment to charge a violation of R.C. 2925.03(A)(2).  Instead, the court's entry and verdict forms recite R.C. 2925.03(A)(1).  None of the parties pointed out the discrepancy during the trial.  The court did, however, instruct the jury in accordance with R.C. 2925.03(A)(2).  Under these

"'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id.* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). However, "'the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" *Id.* at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.*

{¶82} We further observe that the complicity statute does not require the state to charge the defendant with complicity. Instead, R.C. 2923.03(F) allows the state to charge the defendant as a principal offender. The statute provides that "[a] charge of complicity may be stated in terms of [the complicity statute], or in terms of the principal offense." *Id.*

{¶83} In the case sub judice, the state charged appellant in terms of the principal offense. At trial, the state asserted that appellant also is guilty as an aider and abettor, and the trial court gave the jury complicity instructions. Therefore, we will review whether the state presented sufficient evidence to establish either that (1) appellant aided and abetted the principal offender in committing trafficking in heroin, or (2) appellant committed trafficking in heroin as a principal offender.

{¶84} In the case before us, we believe that the state presented sufficient evidence to establish that appellant was more than an innocent bystander to the offense, but instead, that he aided and abetted the principal offender to commit the offense of trafficking in heroin. As we noted above, a complicity conviction requires the state to prove "that the defendant supported,

circumstances, we believe that the trial court committed a
clerical error that it may correct at any time.

assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson* at syllabus. R.C. 2925.03(A)(2) requires that the offender act knowingly in committing the offense. A complicity to trafficking in drugs conviction, therefore, requires the state to demonstrate that the defendant knowingly "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." *Johnson* at syllabus.

{¶85} R.C. 2901.22(B) defines when a person acts knowingly:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when a person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶86} We observe that "'[t]he intent of an accused person dwells in his mind'" and that intent "'can never be proved by the direct testimony of a third person." *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. Instead, intent "'must be gathered from the surrounding facts and circumstances under proper instructions from the court.'" *Id.*, quoting *Huffman*, paragraph four of the syllabus; *e.g., State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143; *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623, 634, 1995 WL 664323 (1995). We further observe that "[i]ntention is a question of fact, and not one of law." *Koenig v. State*, 121 Ohio St. 147, 151, 167 N.E. 385 (1929); *State v. Wamsley*, 6th Dist. Butler No. CA2002-05-109, 2003-Ohio-1872, ¶ 18.

SCIOTO, 20CA3931

{¶87}     We also note that to sustain an R.C. 2925.03(A)(2) trafficking conviction as a principal offender, the state must prove that the defendant had control over, *i.e.*, possessed, the illegal substance.  *State v. Cabrales*, 118 Ohio St.3d 54, 886 N.E.2d 181, 2008–Ohio–1625, ¶ 30, quoting R.C. 2925.01(K) (in order to ship, transport, deliver, distribute, etc., "the offender must 'hav[e] control over'" the illegal substance); *see State v. Floyd*, 7th Dist. No. 18 MA 0106, 2019-Ohio-4878, ¶ 21 (R.C. 2925.03(A)(2) requires "possession of the controlled substance, either constructive or actual").

{¶88}     "Possession" is generally defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  R.C. 2925.01(K). Whether a person knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available."  *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶89}     "Possession * * * may be individual or joint, actual or constructive."  *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976); *State v. Fry*, Jackson App. No. 03CA26, 2004-Ohio-5747, ¶ 39.  "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'"  *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *Fry* at ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19.  For constructive possession to exist, the state

SCIOTO, 20CA3931

must show that the defendant was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91; *Kingsland* at ¶ 13; *accord State v. Huckleberry*, 4th Dist. Scioto No. 07CA3142, 2008-Ohio-1007, ¶ 34; *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 15.

{¶90} Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *E.g., Brown* at ¶ 19; *see, e.g., State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus ("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"). "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * ' " *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary (5 Ed.1979) 221.

{¶91} Furthermore, to establish constructive possession the state need not show that the defendant had "[e]xclusive control" over the contraband. *State v. Tyler*, 8th Dist. Cuyahoga No. 99402, 2013-Ohio-5242, ¶ 24, citing *State v. Howard*, 8th Dist. Cuyahoga No. 85034, 2005-Ohio-4007, ¶ 15, citing *In re Farr*, 10th Dist. Franklin No. 93AP-201, 1993 WL 464632, *6 (Nov. 9, 1993) (nothing in R.C. 2925.11 or 2925.01 "states that illegal drugs must be in the sole or exclusive possession of the accused at the time of the offense"). Instead, "'[a]ll that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.'" *Howard* at ¶ 15, quoting *Farr* at *6. Thus, simply because others may have access in addition to the defendant does not mean that the defendant "could not exercise dominion or control over the drugs." *Tyler* at ¶ 24; *accord State v. Walker*, 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, ¶ 75. We further note that multiple persons

may have joint constructive possession of an object. *State v. Philpott*, 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 67; *Wolery*, 46 Ohio St.2d at 332, 329 ("[p]ossession * * * may be individual or joint" and "control or dominion may be achieved through the instrumentality of another").

{¶92}   In the case sub judice, we believe that the record contains sufficient evidence that, if believed, establishes that appellant aided and abetted the principal offender in committing drug trafficking.  First appellant does not dispute that the vehicle contained more than 50 grams of heroin.  Instead, appellant claims he did not know that the vehicle contained 50 grams of heroin.  Thus, the primary issue the jury had to resolve is whether appellant knowingly aided and abetted the principal offender to commit drug trafficking.  When Trooper Lewis stopped the vehicle, the three occupants had been driving from Michigan to Kentucky, with Smith the front-seat passenger, McKee the driver and appellant seated directly behind McKee.  The back of the driver's seat had been cut open and stuffed into the seat lining a bag that contained more than 50 grams of heroin.  Appellant would have been looking directly at the back of the driver's seat.  The jury reasonably could have inferred that appellant knew about the damage to the driver's seat and knew that the driver's seat had been damaged in order to conceal heroin.  Furthermore, the jury viewed the video evidence of the traffic stop, along with McKee's and Smith's backseat cruiser conversation.  McKee was the most vocal and when Smith spoke, he usually covered his mouth or looked down.  After the troopers told McKee and Smith they discovered heroin in the vehicle, McKee and Smith expressed surprise.  Both denied knowing that heroin was in the vehicle and stated they simply were on their way to Kentucky to visit "some females."  Both also stated that Smith is a truck driver.

{¶93} Appellant had been seated in Trooper Lloyd's cruiser for the majority of the stop, but near the end the troopers placed him in Trooper Lewis' cruiser with McKee. McKee continued to state that he did not know anything about the heroin and that they simply were going to visit "some females" in Kentucky.

{¶94} The jury had the opportunity to view appellant's demeanor shortly after the troopers revealed that they had discovered heroin in the vehicle and could have determined that the combination of appellant's, McKee's and Smith's words and demeanor indicated that they were less than truthful and acted in concert to concoct a cover story that Smith is a truck driver and that the three were simply on their way to Kentucky to visit "some females."

{¶95} We believe, that when viewed in a light most favorable to the prosecution, the evidence shows that appellant assisted, facilitated, or supported the principal offender in transporting the heroin, and not merely an innocent passenger. Because a rational trier of fact could have found that appellant knowingly aided and abetted the principal offender in committing the offense of trafficking in heroin, the record contains sufficient evidence to support appellant's trafficking conviction as an aider and abettor. Moreover, because the record contains sufficient evidence to support appellant's complicity to trafficking conviction, we need not consider whether the record also contains sufficient evidence to show that appellant is guilty of the offense as a principal offender. We note, however, that appellant's proximity to the heroin, the visible damage to the back of the driver's seat, the length of time that appellant had been seated with a direct view of the damage and within reach of the heroin, sufficiently shows that appellant constructively possessed the heroin. *See State v. Criswell*, 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, ¶ 11 quoting *State v. Kingsland*, 177 Ohio App.3d 655, 2008-

Ohio-4148, 895 N.E.2d 633, ¶ 13 ("'presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession'"). *See generally State v. Tackett*, 11th Dist. Ashtabula No. 2018-A-0052, 2019-Ohio-5188, ¶ 42 (defendants traveling in vehicle jointly constructively possessed drugs located in backseat of vehicle). This is not a situation in which appellant, through mere happenstance, found himself at a crime scene with no connection to the crime other than physical presence. Rather, the evidence established that appellant and his companions traveled from Michigan in a rented vehicle that contained a large amount of heroin concealed in the back of the driver's seat. Criminal intent may be established through circumstantial evidence, including presence, companionship and conduct that occurred before, during and after the commission of a criminal offense. Moreover, multiple persons may have simultaneous joint constructive possession of an object.

{¶96} We further point out that in *Criswell*, we concluded that the state failed to present sufficient evidence that the defendant possessed the drugs located in a vehicle that contained multiple occupants. In *Criswell*, the state did not present any evidence to show that the defendant "ever had access to" the drugs. *Id.* at 25. Contrastingly, in the case at bar appellant was seated within reach of the plastic bag that contained heroin.

{¶97} For all of the foregoing reasons, we disagree with appellant that the record does not contain sufficient evidence to support his trafficking conviction.

{¶98} Appellant also asserts that the state failed to present sufficient evidence to support his possessing criminal tools conviction. As the state correctly points out, however, the jury

SCIOTO, 20CA3931

found appellant not guilty of this offense. Appellant's argument, therefore, is moot. See App.R. 12(A)(1)(c).

{¶99} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV

{¶100} In his fourth assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence. Once again, appellant claims that the jury convicted him based upon his mere presence in the vehicle and his relation to Smith.

{¶101} We observe that the "question to be answered when a manifest-weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus. A court that is considering a manifest-weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328; *accord State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, 166 N.E.3d 1066, ¶ 80. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. "'Because the trier of fact sees and hears the

witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). As the court in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶21, explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶102} Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., Eley*; *accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when ""'the greater amount of credible

evidence"'" supports it). A court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶ 328. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶103} In the case sub judice, we do not believe that the evidence weighs heavily against appellant's conviction for complicity to trafficking in heroin. As we explained in appellant's third assignment of error, the state presented ample circumstantial evidence to show that appellant aided or abetted the principal offender in committing the offense. The jury obviously credited the state's theory of the case that appellant acted in concert with Smith and McKee to transport drugs. After our review, we are unable to conclude that the jury committed a manifest miscarriage of justice by convicting appellant.

{¶104} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V

{¶105} In his fifth assignment of error, appellant asserts that his six-year prison sentence is contrary to law. In particular, appellant contends that the circumstances do not support the trial court's decision to impose a six-year prison term because appellant (1) was 18 years of age

at the time of the offense, (2) had no previous felony convictions, and (3) committed a non-violent offense. Appellant thus claims that the trial court should have imposed the minimum term.

{¶106} When reviewing felony sentences, appellate courts apply the standard of review outlined in R.C. 2953.08(G)(2). *State v. Prater*, 4th Dist. Adams No. 18CA1069, 2019-Ohio-2745, ¶ 12, citing *State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 13. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

{¶107} A defendant bears the burden to establish, by clear and convincing evidence, that a sentence is either contrary to law or that the record does not support the specified findings. *State v. Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, ¶ 48; *State v. Shankland*, 4th Dist. Washington Nos. 18CA11 and 18CA12, 2019-Ohio-404, ¶ 20. "[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶108}   We further observe that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42.  Furthermore, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32.  Consequently, appellate courts cannot review a felony sentence when "the appellant's sole contention is that the trial court improperly considered the factors of R.C. 2929.11 or 2929.12 when fashioning that sentence."  *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256, ¶ 9, citing *Jones* at ¶ 42; *accord State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13-14 ("In light of *Jones*, assigning error to the trial court's imposition of sentence as contrary to law based solely on its consideration of R.C. 2929.11 and 2929.12 is no longer grounds for this court to find reversible error."); *State v. Loy*, 4th Dist. Washington No. 19CA21, 2021-Ohio-403, ¶ 30.

{¶109}   In the case sub judice, appellant's assignment of error asserts that the trial court's six-year prison sentence is contrary to law because the court failed to consider certain factors that appellant claims support a lesser term of imprisonment.  As *Jones* indicates, however, R.C. 2953.08(G)(2)(b) does not allow this court to independently review the record to determine whether the trial court imposed an appropriate sentence in light of the R.C. 2929.11 and R.C. 2929.12 factors.

{¶110}   Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error and affirm the trial court's judgment.

SCIOTO, 20CA3931

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.