[Cite as *State v. Foster*, 2023-Ohio-746.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO  COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No.  21CA3967 |
| | : | |
| v. | : | |
| | : | DECISION AND JUDGMENT |
| DIANNA L. FOSTER, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Valerie M. Webb, The Law Office of Valerie M. Webb, LLC, Portsmouth, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, Matthew F. Loesch, Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Appellant Dianna L. Foster, "Foster," appeals the October 13, 2021 Judgment Entry of the Scioto County Court of Common Pleas.  Foster was convicted of four counts:  Trafficking in Cocaine, Possession of Cocaine, Trafficking in Marihuana, and Possession of Marihuana.  On appeal, Foster asserts three of her convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence.  For the reasons which follow, we find no merit to the arguments raised in this

appeal.  Accordingly, we overrule Foster's assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On January 12, 2021, Foster was indicted on four drug-related counts:  Count One, Trafficking in Cocaine, R.C. 2925.03(A)(2)/2925.03(C)(4)(f); Count Two, Possession of Cocaine, R.C. 2925.11(A)/2925.11(C)(4)(e); Count Three, Trafficking in Marihuana, R.C. 2925.03(A)(2)/2925.03(C)(3)(c); and Count Four, Possession of Marihuana, R.C. 2925.11(A)/2925.11(C)(3)(c).  Counts One and Two are first-degree felonies.  Count Three is a fourth-degree felony and Count Four is a fifth-degree felony.

{¶3} The indictment stemmed from events which occurred on November 20, 2020 on S.R. 104 in Scioto County.  On that date, Foster was traveling southbound with a co-defendant, Sonya D. Adams, "Adams," in Adams' black Ford Explorer.  Adams' vehicle was rear-ended by another vehicle after Adams attempted to avoid a collision with a deer.  Upon investigation of the accident, officers of the Ohio State Highway Patrol found substances thought to be cocaine and marihuana in Adams' vehicle.

{¶4} Subsequent to her arrest upon the indictment, Foster was arraigned and allowed to sign a recognizance bond.  She remained out of jail

during the trial court proceedings. On October 7, 2021, Adams pled guilty

to one count of trafficking in cocaine and one count of trafficking in

marihuana.

{¶5} Foster elected to proceed to jury trial which occurred on October

12 and October 13, 2021. At the outset, Foster admitted guilt to Count Four,

possession of marihuana. The State of Ohio presented the testimony of three

witnesses, Ohio State Highway Patrol Troopers Nick Lewis and Benjamin

Wallace, and Helena Singleton, a criminologist from the Ohio Bureau of

Criminal Investigation. Ms. Singleton's testimony regarding the analysis of

the substances found in Adams' vehicle and the reports prepared as a result

is not being challenged in this appeal.

{¶6} Trooper Benjamin Wallace testified that upon arrival at the

accident scene, he first made contact with Adams. As he was walking to

Adams' vehicle he smelled the odor of raw marihuana coming from it. He

could also smell the odor of burnt marihuana about Adams' breath and

person. Dianna Foster was the front seat passenger.

{¶7} Trooper Wallace brought Adams and Foster back to his cruiser

and told them he would perform a pat-down search for weapons. Trooper

Wallace questioned Adams and she admitted they had been smoking

marihuana earlier in the day. Adams also admitted there was marihuana in

the vehicle. Trooper Wallace then advised Adams and Foster of their Miranda rights.

{¶8} When Troopers Wallace and Lewis searched Adams' vehicle, Trooper Wallace found a ziplock bag depicted in Exhibit 1 under the front passenger seat. He opened it and found suspected marihuana. Trooper Lewis found a black handbag located behind the driver's seat in between the driver's seat and the middle passenger seat. Trooper Lewis handed Trooper Wallace the black handbag. Trooper Wallace could see another larger bag of suspected marihuana and a bag containing a white substance suspected of being cocaine. Both troopers testified at trial that in their opinion, the black bag behind the driver's seat was easily accessible to Foster and was actually easier for her to reach than Adams.

{¶9} Trooper Wallace testified he completed Exhibit 6, the property control forms. When Trooper Wallace questioned Foster and Adams as to the ownership of the bags, Foster stated that the bag under the front passenger seat was hers and Adams claimed the black handbag behind the driver's seat. The property control form Trooper Wallace completed reflected these admissions.

{¶10} On cross-examination, Trooper Wallace clarified that the property control forms indicated ownership of the bags, not the suspected

drugs themselves.  He also acknowledged that the vehicle search did not yield an unusual amount of cash, scales, or baggies—items often found in conjunction with drug trafficking activities.  Trooper Wallace further acknowledged there was no DNA or fingerprint evidence linking Foster to the black handbag which ultimately contained both cocaine and marihuana.

{¶11} The jury also viewed Exhibit 7, a CD of Trooper Wallace's trooper cam.[1]  Trooper Wallace testified his cruiser was equipped with audio and video devices which were functioning properly on November 20, 2020.  A front-facing camera in his cruiser captures a traffic stop.  A rear-facing camera shows the back of Trooper Wallace's cruiser and any occupants.  Trooper Wallace also wears a "belt mike" to capture audio outside the vehicle.  As the CD was played, Trooper Wallace explained what was transpiring. During a portion of the video, Adams took Foster's hand.  The following are excerpts from the CD which, the State argued, support the State's claim that Foster knowingly trafficked and possessed cocaine and marihuana:

Trooper Wallace:   Is there any marihuana up there?

---

[1] Exhibit 7 is difficult to hear at times.  Before Exhibit 7 was played, the trial court reviewed a proposed "listening aid," a transcript of the conversation on Exhibit 7, and ultimately decided to allow it to be distributed to the jurors.  Before it was distributed, the trial court gave an instruction that the listening aid was being provided only for the purpose of helping the jurors understand the recording.  The jurors were also instructed that if there was a difference or discrepancy between the listening aid and the recording, the jurors were to rely only on the recording because the recording was the actual evidence. This same instruction was given the jurors during closing instructions and prior to deliberation.

Ms. Adams:        In the car?

Trooper Wallace:  Yeah.

Ms. Adams:        Yea.

* * *

Trooper Wallace:  Okay.  Where's the marihuana in the car?

Ms. Adams:        In the bag - - in the - - in the black bag.

* * *

Ms. Adams:        [Speaking to Foster] Okay.  He's going to find what's

                  under the seat.  * * *

Trooper Wallace:  [Speaking to Trooper Lewis] Wonder if that's the black

                  bag she was talking about?  I think there's over 200

                  grams. * * * She said in the black bag.  So, I think she's

                  taking credit for everything. * * * I wonder if this plastic

                  bag underneath here is the passenger, if this one's hers.

* * *

Ms. Adams:        He touched my v-vah-jj and everything.

Ms. Foster:       I know. He touched mine too.  There goes my job.

{¶12} At this point, Trooper Wallace described how a pat-down search is performed.  He explained that it is performed on camera.  There may be something hidden in a bra or between the legs.  With both male and

female suspects, officers check between the legs and armpit areas.  Officers also check bra areas.  Officers explain to those detained how the pat-down is going to be performed.  The CD continued:

* * *

Ms. Foster:          Oh shit.  I need to call Jim Peach. [2]

* * *

Ms. Adams:          What I should have done - - what I should have done was (inaudible).

Ms. Foster:          It's okay.  It's not your fault.  We'll get through it together.  He kept telling us to get out of town.  I should have done it too. * * * He's going through my purse.

* * *

Trooper Wallace:  Okay.  What was found up there, the black bag that you said in the backseat was yours, correct?

Ms. Adams:          Um hmm.

Trooper Wallace:  Yes, okay.  And what was under your seat, that was yours?

Ms. Foster:          Yes.

---

[2] A Scioto County-based bail bondsman.

{¶13} After the State played State's Exhibit 7, Trooper Wallace testified that the video from his cruiser dash-cam, both the front-facing and inside camera, were true and accurate depictions of a copy of what he witnessed on the evening in question. He testified he marked his audio and video recording as evidentiary and submitted it to the prosecutor's office for review for potential charges. The women were not arrested that night. The substances confiscated were sent to the Ohio State Highway Patrol crime lab for testing.

{¶14} Similarly, Trooper Nick Lewis testified that when he approached Adams' vehicle he smelled a strong odor of raw marihuana when he was 10-15 yards away. Trooper Lewis recalled commenting to another person at the scene, "I guess I'll be searching that thing." Trooper Lewis's testimony corroborated Trooper Wallace's regarding the location of the bags in the Adams vehicle and the substances contained within. On cross-examination, Trooper Lewis admitted he was wearing a belt-cam microphone but did not save this evidence of the search because, he explained, his camera would have shown the same thing as Trooper Wallace's.

{¶15} The trial court also admitted the State's exhibits which included photographs of the substances confiscated and corresponding lab reports. Of

pertinence to this appeal, as discussed above, the trial court admitted State's

Exhibit 6, a property control/lab submission form and State's Exhibit 7, a

copy of a cruiser video.

{¶16} After the State presented its case and rested, defense counsel

offered one exhibit, a copy of co-defendant Adams' waiver and guilty

finding on the two trafficking counts.  The defense then rested.

{¶17} At the conclusion of trial, Foster was convicted on all counts of

the indictment.  On October 27, 2021, the court conducted Foster's

sentencing hearing.  The court found that the crimes charged in Counts One,

Two, and Four were allied offenses of similar import and therefore should

merge for purposes of sentencing.  The sentences on Counts One and Three

were ordered to be served consecutively.  Foster was sentenced to a

minimum prison term of seven years with six years being a mandatory

minimum, to an indefinite maximum prison term of up to ten years.  This

timely appeal followed. [3]

---

[3] Defense counsel attached the October 13, 2021 entry documenting the jury's findings to the notice of appeal. Counsel did not attach the November 3, 2021 judgment entry of sentence.  Pursuant to App.R. 3(A), the only jurisdictional requirement for the filing of a valid appeal is the timely filing of a notice of appeal. When presented with other defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted. *See State v. Gray,* 4th Dist. Meigs No. 99CA07, 2000 WL 502821 (Apr. 21, 2000), Fn. 1, (Where the State did not object to appeal on jurisdictional grounds, State was not prejudiced by failure to include a related judgment entry and basis of appeal was clear, it would be unjust not to consider related judgment entry.)  Here, the appellate record contains a notification that as of November 5, 2021, Foster had perfected the appeal by attaching a copy of the November 5, 2021 sentencing judgment entry notification.

## ASSIGNMENTS OF ERROR

I.    APPELLANT'S CONVICTIONS ON COUNTS ONE, TWO, AND THREE SHOULD BE REVERSED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT.

II.   APPELLANT'S CONVICTIONS ON COUNTS ONE, TWO, AND THREE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.

## SUFFICIENCY OF THE EVIDENCE

{¶18} As one of the key elements of Foster's convictions for trafficking and possession, the State of Ohio was required to prove beyond a reasonable doubt that Foster knowingly possessed both the cocaine and marihuana found in Adams' vehicle. Under the first assignment of error, Foster contends that there was no evidence of actual or constructive possession of the substances. In this case, the following facts are not in dispute:

1.    The women were traveling in Adams' vehicle and Adams was driving.
2.    Foster was a front seat passenger.
3.    Upon search of Adams' vehicle, troopers found two separate bags.
4.    A ziplock bag was under the front passenger seat that contained green vegetation later found to be marihuana. Foster claimed ownership of this bag.
5.    A black hand bag was behind the driver's seat and it contained a white substance and green vegetation

later found to be cocaine and marihuana. Adams
claimed ownership of this bag.

{¶19} Foster has not questioned the training and experience of the troopers, the lab reports identifying the substances obtained from Adams' vehicle, the reliability of the chain of custody of the substances at issue, or the analyst's credentials and expertise.  Thus, resolution of the first assignment of error turns solely upon the issue of whether or not Foster jointly possessed the cocaine and marihuana of which Adams claimed ownership, thus making her complicit in Adams' trafficking activities.

SUFFICIENCY STANDARD OF REVIEW

{¶20} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.  *See State v. Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, at ¶ 22; *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt.  *Thompkins, syllabus.*  The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the

offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins,* 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶21} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *See Wickersham, supra,* at ¶ 23; *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *See State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

## LEGAL ANALYSIS

{¶22} At the outset, we observe that although the trial court found Foster guilty of trafficking and possessing cocaine, the trial court merged the possession offense with the trafficking offense. Thus, if sufficient evidence supports Foster's trafficking conviction, an erroneous verdict on the merged

count would be harmless. *See State v. Whitehead,* 4th Dist. Scioto No. 20CA3931, 2022-Ohio-479, at ¶ 78; *State v. Worley,* 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 73; *State v. Powell,* 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990); *State v. Campbell,* 4th Dist. Vinton No. 20CA723, 2021-Ohio-2482, ¶ 46; *see also State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 54 (because court does not impose sentence for merged offenses, defendant is not "convicted" of merged offenses and no "conviction" for appellate court to vacate). Consequently, if we determine that sufficient evidence supports Foster's trafficking in cocaine conviction, we need not address her sufficiency argument regarding the possession offense. Yet these issues are interrelated because to sustain an R.C. 2925.03(A)(2) trafficking conviction as a principal offender, the state must also prove that the defendant had control over, i.e., possessed, the illegal substance. *State v. Cabrales,* 118 Ohio St.3d 54, 886 N.E.2d 181, 2008-Ohio-1625, ¶ 30, quoting R.C. 2925.01(K) (in order to ship, transport, deliver, distribute, etc., "the offender must 'hav[e] control over' " the illegal substance); *see State v. Floyd,* 7th Dist. No. 18 MA 0106, 2019-Ohio-4878, ¶ 21 (R.C. 2925.03(A)(2) requires "possession of the controlled substance, either constructive or actual"). Sufficient evidence of possession is what Foster challenges in this appeal.

{¶23} R.C. 2925.03(A)(2) contains the essential elements of

trafficking in drugs:

No person shall knowingly

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare
for distribution, or distribute a controlled substance or a
controlled substance analog, when the offender knows or
has reasonable cause to believe that the controlled
substance or a controlled substance analog is intended for
sale or resale by the offender or another person.

{¶24} Therefore, in analyzing the sufficiency of the evidence

supporting Foster's trafficking in cocaine and marihuana convictions, our

primary focus is whether Foster jointly possessed or had control over the

substances that Adams ultimately took responsibility for through her

statements to the troopers and her voluntary plea and convictions.

{¶25} "Possession" is generally defined as "having control over a

thing or substance but may not be inferred solely from mere access to the

thing or substance through ownership or occupation of the premises upon

which the thing or substance is found." R.C. 2925.01(K). *See also*

*Whitehead, supra,* at ¶ 88. "Whether a person knowingly possessed a

controlled substance 'is to be determined from all the attendant facts and

circumstances available.' " *Id.,* quoting, *State v. Teamer*, 82 Ohio St.3d 490,

492, 696 N.E.2d 1049 (1998).

{¶26} "Possession * * * may be individual or joint, actual or constructive." *State v. Wolery,* 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976); *State v. Fry,* 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. " ' "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession." ' " *Whitehead, supra* at ¶ 89, quoting *State v. Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *Fry* at ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown,* 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91; *Kingsland* at ¶ 13; *accord State v. Huckleberry,* 4th Dist. Scioto No. 07CA3142, 2008-Ohio-1007, ¶ 34; *State v. Harrington,* 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 15.

{¶27} Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *See Brown* at ¶ 19; *see also State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus

("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"). "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' " *State v. Nicely,* 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary (5 Ed.1979) 221.

{¶28} "Furthermore, to establish constructive possession the state need not show that the defendant had '[e]xclusive control' over the contraband." *Whitehead,* at ¶ 91, quoting *State v. Tyler,* 8th Dist. Cuyahoga No. 99402, 2013-Ohio-5242, ¶ 24, citing *State v. Howard,* 8th Dist. Cuyahoga No. 85034, 2005-Ohio-4007, ¶ 15, citing *In re Farr,* 10th Dist. Franklin No. 93AP-201, 1993 WL 464632, *6 (Nov. 9, 1993) (nothing in R.C. 2925.11 or 2925.01 "states that illegal drugs must be in the sole or exclusive possession of the accused at the time of the offense"). Instead, " '[a]ll that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.' " *Howard* at ¶ 15, quoting *Farr* at *6. Thus, simply because others may have access in addition to the defendant does not mean that the defendant "could not exercise dominion or control over the drugs." *Tyler* at

¶ 24; *accord State v. Walker,* 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, ¶ 75. We further note that multiple persons may have joint constructive possession of an object. *See State v. Philpott,* 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 67; *Wolery,* 46 Ohio St.2d at 332, 329 ("[p]ossession * * * may be individual or joint" and "control or dominion may be achieved through the instrumentality of another").

{¶29} Based on our review of the evidence presented to the jurors, we find there was sufficient evidence for any rational trier of fact to find beyond a reasonable doubt that Foster knowingly possessed the contents of the black handbag of which Adams' also claimed ownership. Both officers testified that Adams' black handbag was readily accessible to Foster. It is arguable that Foster actually possessed the drugs because they were within her immediate physical possession. *See Whitehead, supra,* at ¶ 89.

{¶30} Moreover, the circumstantial evidence demonstrates that Foster constructively possessed the drugs. What we find telling is Adams' comment to Foster "He's going to find what's under the seat." Adams had already admitted to Trooper Wallace, in Foster's presence, that there was marihuana in the vehicle. This comment to Foster indicates Foster's knowledge that there was also cocaine in the vehicle. Foster was conscious

of the presence of the drugs. *Whitehead, supra*, at ¶ 89, (internal citations omitted.) Exhibit 7 clearly shows Adams turn her head to Foster when she made this statement, and this statement is not difficult to hear on the recording. Foster does not express any surprise or denial when Adams makes this statement to her. Thus, this circumstantial evidence may be construed as demonstrating Foster's constructive possession of the cocaine.

{¶31} Based on our review, we believe that when viewed in a light most favorable to the prosecution, the evidence demonstrates that Foster was more than an innocent bystander to the offenses, but instead, establishes that she aided and abetted the principal offender to commit the offenses of trafficking in cocaine and trafficking in marihuana. R.C. 2923.03(A)(2), Ohio's complicity statute provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." "[T]o aid or abet is ' "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment." ' " *State v. McFarland,* 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 27, quoting *State v. Johnson,* 93 Ohio St.3d 240,243, 754 N.E.2d 796 (2001), quoting Black's Law Dictionary 69 (7th Ed.1999).

{¶32} "A conviction for complicity by aiding and abetting under R.C. 2923.03(A)(2) requires the state to prove, beyond a reasonable doubt, 'that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.' " *Whitehead, supra,* at ¶ 81, quoting *Johnson at syllabus.* " 'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Id.* at 245, quoting *State v. Pruett,* 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). However, " 'the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *Id*. at 243, quoting *State v. Widner,* 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id*.

{¶33} We further observe that the complicity statute does not require the state to charge the defendant with complicity. *See Whitehead, supra,* at ¶ 82. Instead, R.C. 2923.03(F) allows the state to charge the defendant as a principal offender. The statute provides that "[a] charge of complicity may be stated in terms of [the complicity statute], or in terms of the principal offense." *Id.* In this case, the state charged Foster in terms of the principal

offense. At trial, the state asserted that Foster also is guilty as an aider and abettor, and the trial court gave the jury complicity instructions.

{¶34} As we noted above, a complicity conviction requires the state to prove "that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson at syllabus.* R.C. 2925.03(A)(2) requires that the offender act knowingly in committing the offense. A complicity to trafficking in drugs conviction, therefore, requires the state to demonstrate that the defendant knowingly "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." *Johnson at syllabus.*

{¶35} R.C. 2901.22(B) defines when a person acts knowingly:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when a person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶36} We observe that " '[t]he intent of an accused person dwells in his mind' " and that intent " 'can never be proved by the direct testimony of a third person.' " *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637

(1978), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. Instead, intent " 'must be gathered from the surrounding facts and circumstances under proper instructions from the court.' " *Id.,* quoting *Huffman,* paragraph four of the syllabus; *e.g., State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143; *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623, 634 (1995). We further observe that "[i]ntention is a question of fact, and not one of law." *Koenig v. State,* 121 Ohio St. 147, 151, 167 N.E. 385 (1929); *State v. Wamsley,* 6th Dist. Butler No. CA2002-05-109, 2003-Ohio-1872, ¶ 18.

{¶37} Based on our review, we believe that when viewed in a light most favorable to the prosecution, the evidence shows that Foster was complicit in trafficking in cocaine and marihuana. Because we believe a rational trier of fact could have found beyond a reasonable doubt that Foster knowingly aided and abetted the principal offender in committing the offense of trafficking in cocaine and marihuana, the record contains sufficient evidence to support Foster's trafficking in cocaine and marihuana convictions. Like the State, we believe that the co-defendants' conduct and conversation in the back seat of the cruiser supports the conclusion that Foster supported, assisted, encouraged, and cooperated in Adams' trafficking cocaine and marihuana. As the evidence demonstrated, Adams

took Foster's hand in the back seat of the cruiser, as if to bolster or support her during the officer's investigation. Foster commented "There goes my job"; "Get in contact with Jim Peach"; "we should have left." These comments indicate Foster believed she was going to be in legal trouble because of the substances discovered in the search. "We'll get through this together" also indicates Foster's support for Adams and Foster's belief that she was going to be in legal trouble along with Adams.

{¶38} We also interpret Foster's actions and comments as indicating an air of resignation. During the investigation and during Adams' statements to officers, Foster's body language is indicative. She hangs her head and shoulders at times, stares distantly at times, and makes no protest when Adams whispers "He's going to find what's under the seat." Instead of acting with shock or surprise that the vehicle was being searched and substances including cocaine would be discovered, Foster's comments indicate she is anticipating the future, planning her strategy, and regretting her participation in trafficking. Foster indicates she needs to get in touch with a bail bondsman. She anticipates losing her employment. She ruminates that she had not "gotten out of town" as had been suggested by someone apparently familiar with her activities. Furthermore, because the record contains sufficient evidence to support Foster's complicity to

trafficking, we need not consider whether the record also contains sufficient evidence to show Foster's guilt as a principal offender.

{¶39} For the foregoing reasons, we find no merit to Foster's first assignment of error. We find the element of possession is supported by sufficient evidence. We further find her convictions in Counts One, Two, and Three are supported by sufficient evidence. Accordingly, the first assignment of error is overruled.

## MANIFEST WEIGHT OF THE EVIDENCE

## STANDARD OF REVIEW

{¶40} Under the second assignment of error, Foster again contends that there was no indicia of ownership or forensic evidence to suggest that she had knowledge of the contents in Adams' bag, or that she exercised dominion or control over the contents. Furthermore, she contends that no evidence was presented to demonstrate complicity in Adams' activities. Therefore, Foster concludes that her convictions are against the manifest weight of the evidence.

{¶41} "We observe that the 'question to be answered when a manifest-weight issue is raised is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." ' " *Whitehead, supra,* at ¶ 101, quoting

*State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229,

¶ 81, in turn quoting *State v. Getsy,* 84 Ohio St.3d 180, 193-194, 702 N.E.2d

866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978),

syllabus.  A court that is considering a manifest-weight challenge must

" 'review the entire record, weigh the evidence and all reasonable inferences,

and consider the credibility of witnesses.' "  *State v. Beasley,* 153 Ohio St.3d

497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton,*

148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328; *accord State v.*

*Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, 166 N.E.3d 1066, ¶ 80.  The

reviewing court must bear in mind, however, that credibility generally is an

issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752

N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-

Ohio-1744, ¶ 31.  " 'Because the trier of fact sees and hears the witnesses

and is particularly competent to decide "whether, and to what extent, to

credit the testimony of particular witnesses," we must afford substantial

deference to its determinations of credibility.' "  *Barberton v. Jenney,* 126

Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v.*

*Konya,* 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting

*State v. Lawson,* 2nd Dist. Montgomery No. 16288, 1997 WL 476684, *4

(Aug. 22, 1997). As the court in *Eastley v. Volkman*, 132 Ohio St.3d 328,

2012-Ohio-2179, 972 N.E.2d 517, ¶21, explained:

> " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' "

*Id*. at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d

77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence

3d, Appellate Review, Section 60, at 191-192 (1978).

{¶42} Thus, an appellate court will leave the issues of weight and

credibility of the evidence to the fact finder, as long as a rational basis exists

in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No.

11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No.

07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier

of fact has some factual and rational basis for its determination of credibility

and weight.").

{¶43} Accordingly, if the prosecution presented substantial credible

evidence upon which the trier of fact reasonably could conclude, beyond a

reasonable doubt, that the essential elements of the offense had been

established, the judgment of conviction is not against the manifest weight of the evidence. *See Whitehead,* at ¶ 102; *see also Eley; accord Eastley* at ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when " ' "the greater amount of credible evidence" ' " supports it). A court may reverse a judgment of conviction only if it appears that the fact finder, when it resolved the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶ 328. A reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, quoting *Martin,* 20 Ohio App.3d at 175; *accord State v. Clinton,* 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

## LEGAL ANALYSIS

{¶44} In this case, we do not believe that the evidence weighs heavily against Foster's convictions for complicity to trafficking in cocaine and

marihuana and possession of cocaine. As we explained in Foster's previous assignment of error, the State presented ample circumstantial evidence to show that Foster actually and constructively possessed the drugs at issue and that she aided or abetted Adams in committing the trafficking offenses. The jurors were in the best position to review the evidence presented. The jury obviously credited the state's theory of the case that Foster acted in concert with Adams to transport the drugs. After our review, we are unable to conclude that the jury committed a manifest miscarriage of justice by convicting appellant.

{¶45} For the foregoing reasons, we find no merit to Foster's second assignment of error and it is hereby overruled.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**