[Cite as *State v. Crum*, 2025-Ohio-4443.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :
                                        :        Case No. 23CA4045
    Plaintiff-Appellee,                 :
                                        :
v.                                      :
                                        :
JUSTIN CRUM,                            :        DECISION AND JUDGMENT
                                        :        ENTRY
    Defendant-Appellant.                :
                                        :        **RELEASED: 09/18/2025**
_____

<u>APPEARANCES</u>:

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Wilkin, J.

{¶1}    This is an appeal of a Scioto County Court of Common Pleas judgment entry in which Justin Crum ("Crum") was convicted of one count of aggravated trafficking in drugs (methamphetamine), one count of trafficking in heroin, and one count of trafficking in a fentanyl-related compound.  On appeal Crum contends the jury verdicts are against the manifest weight of evidence.  After reviewing the parties' arguments, the record, and the applicable law, we find no merit to his sole assignment of error and affirm the judgment of the trial court.

BACKGROUND

{¶2}    On November 23, 2020, Sergeant Drew Kuehne ("Kuehne") of the Ohio State Highway Patrol was traveling southbound on U.S. 23, south of Lucasville, when he saw a silver vehicle make an unsafe lane change and also cross over the fog line on

the right side of the roadway.  Kuehne noticed multiple people were in the car and that

the vehicle registration was from Kentucky.  Kuehne stopped the car for the violation.

{¶3}    When he approached the passenger side of the vehicle, Kuehne noticed

fairly quickly that the vehicle occupants seemed excessively nervous.  Kuehne

observed that the driver, Jaime Young ("Young"), was breathing heavily and speaking

rapidly.  Further, Young's voice seemed to tremble at times.  Crum, who was the front-

seat passenger, made zero eye contact, which in Kuehne's experience was unusual

behavior for a routine traffic stop.  Kuehne also noticed Crum's hands, where the veins

would be, had numerous cuts and sores.  In Kuehne's experience these types of sores

are associated with narcotics or meth use.  Crum eventually admitted to using drugs.

{¶4}    Kuehne determined that the car belonged to Crum's mother.  When

Kuehne questioned Young about the other occupants of the car, she told him that Crum

was her boyfriend but she seemed slow to identify the backseat passengers, or that she

was unfamiliar with their names.  She said that the passengers were friends of Crum

and identified them as Colby Maynard ("Maynard") and Brittany Collins ("Collins").

When Kuehne asked Young about her destination, she indicated the group was

returning from a trip to Columbus from Kentucky.  Young told Kuehne that she had to

sign forms related to her recently deceased father's estate.  Kuehne asked Young if

there was anything illegal in the car, and she said "I don't think…uh…no, no."  Young

later said that Crum could be a "druggie" if he had a "secret life."  She also said that

needles might be found in the car.

{¶5}    While Kuehne was questioning Young, Ohio State Highway Patrol Trooper

and K-9 Handler Ryan Day ("Day") arrived on the scene to assist Kuehne.  When

approaching the vehicle, Day could see the rear passenger (Collins) moving around a lot, including her head and shoulder area.  He, therefore, went up to the vehicle, opened the back-seat passenger door, and saw that Collins had her hand completely down her pants.  Collins was removed from the car.  When Collins was asked why her hand was down her pants, she indicated that she had some type of surgery, but it was on the other side of her body, and Day saw that her hand was in her groin area, like her crotch.  Her pants were unsnapped and unzipped.  Day also observed that the group provided conflicting stories about their trip – one said they were just along for the ride, while Collins first said they were coming from Columbus, then later said they were coming from Kentucky to visit family.  The drive roundtrip was over six hours long.

{¶6}    Kuehne also noticed a bulge down the front of Collins' pants.  Nevertheless, Collins kept saying, "I don't have anything, I don't have anything."  Kuehne told Collins he believed she did have something, and eventually Collins surrendered a package of suspected drugs to him.  When Day had first removed Collins from the car, Young began crying in the backseat of Kuehne's cruiser where she had been seated during the stop.

{¶7}    The troopers thoroughly searched the car and found no more contraband.  They submitted the package of contraband to the lab.  The analysis revealed methamphetamine exceeding 26 grams; heroin/fentanyl exceeding 1 gram, and fentanyl exceeding 2 grams—the total amount exceeded personal use amounts.

{¶8}    On June 9, 2021, Crum, along with his co-defendants (Collins, Maynard, and Young), were indicted with six counts:  Count 1, aggravated trafficking in drugs (methamphetamine), a second-degree felony, in violation of R.C. 2925.03(A)(2) and

(C)(1)(d); Count 2, trafficking in heroin, a fourth-degree felony, in violation of R.C. 2925.03(A)(2) and (C)(6)(c); Count 3, trafficking in a fentanyl-related compound, a fourth-degree felony, in violation of R.C. 2925.03(A)(2) and (C)(9)(c), Count 4, aggravated possession of drugs (methamphetamine), a second-degree felony, in violation of R.C. 2925.11(A) and (C)(1)(c); Count 5, possession of heroin, a fourth-degree felony, in violation of R.C. 2925.11(a) and (C)(6)(b); and Count 6, possession of a fentanyl-related compound, a fourth-degree felony, in violation of R.C. 2925.11(A) and (C)(11)(b).

{¶9}     At the trial with co-defendant Maynard, the State called as its witnesses: Young, Kuehne, Day, Sergeant Jodie Conkel, who authenticated certain jail phone calls Maynard made, and the chemical laboratory supervisor, who testified about the weight, properties, and identity of the drugs.  After hearing the evidence and reviewing exhibits, including the dash-cam video of Kuehne, the jury found Crum guilty of all counts.  The trial court merged Counts 4, 5, and 6 with Counts 1, 2, and 3, respectively, and the State elected for the trial court to sentence on Counts 1, 2, and 3 – the trafficking counts.  The trial court sentenced Crum to three to four and one-half years on Count 1, twelve months each on Counts 2 and 3.  The trial court ran Counts 2 and 3 concurrently to one another.  The trial court ran Count 1 consecutive to Count 3 for a total sentence of four to five and one-half years, three years of which were mandatory.  Crum timely appealed the nunc pro tunc entry of conviction and sentencing.

ASSIGNMENT OF ERROR

I.     DEFENDANT-APPELLANT'S GUILTY VERDICTS ARE AGAINST THE
       MANIFEST WEIGHT OF THE EVIDENCE.

{¶10}  In his sole assignment of error, Crum contends that the guilty verdicts are against the manifest weight of evidence.  He posits that the evidence of Crum's culpable mental state must be substantial but the only evidence of his culpable mental state came from his girlfriend's testimony.  He asserts that her testimony was not credible, she was benefitting her own criminal case, so therefore the finding of guilt by the jury was a manifest miscarriage of justice.  The State responds that circumstantial evidence has equal weight to direct evidence and that the jury was free to believe some, all, or none of Young's testimony.  The State asserts the determination of credibility was within the jury's province.

A.  Law.

{¶11}  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶12}   The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 2014-Ohio-1966, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), citing *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.).

{¶13}   In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.), citing *State v. Wilson*, 2014-Ohio-3182, ¶ 24 (9th Dist.), citing *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences (sic.) do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 2015-Ohio-5332, ¶ 31 (4th Dist.), quoting *State v. Proby*, 2015-Ohio-3364, ¶ 42 (10th Dist.), citing *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.).

{¶14}   Crum challenges the jury's guilty verdicts on all six counts.  However, we note at the outset that the trial court merged the possession counts with the trafficking counts.  Thus, if the manifest weight supports Crum's trafficking conviction, then an erroneous verdict on the merged count would be harmless.  *State v. Foster*, 2023-Ohio-746, ¶ 22 (4th Dist.).  *See also, State v. Whitehead,* 2022-Ohio-479, ¶ 78 (4th Dist.) and *State v. Worley*, 2021-Ohio-2207, ¶ 73.  Even so, the issues are "interrelated because to sustain an R.C. 2925.03(A)(2) trafficking conviction as principal offender, the state

must also prove that the defendant had control over, i.e., possessed, the illegal substance." *Foster* at ¶ 22, citing *State v. Cabrales,* 2008-Ohio-1625, ¶ 40, quoting R.C. 2925.01(K) (in order to ship, transport, deliver, distribute, etc., "the offender must 'hav[e] control over' " the illegal substance); *see also, State v. Jones,* 2011-Ohio-1108, ¶ 11 (4th Dist.).

{¶15}  R.C. 2925.03(A)(2) provides, in pertinent part, "(A) [n]o person shall knowingly do any of the following * * * (2) [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶16}  "Possession" is generally defined as "having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K); *State v. Bennett,* 2024-Ohio-4557, ¶ 35, (4th Dist.). "Possession may be actual or constructive." *Bennett* at ¶ 35 citing *State v. Gavin*, 2015-Ohio-2996, ¶ 35, (4th Dist.), quoting *State v. Moon*, 2009-Ohio-4830, ¶ 19, (4th Dist.). "Actual possession exists when circumstances indicate that an individual has or had an item within his immediate physical possession[.]" *Id.* citing *State v. Kingsland*, 2008-Ohio-4148, ¶ 13, (4th Dist.). Constructive possession, on the other hand, "exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Id.* citing *Gavin* at ¶ 35.

{¶17}  In addition, R.C. 2901.22(B) provides:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

*State v. Crumpton,* 2024-Ohio-5064, ¶ 28 (4th Dist.).

{¶18}  In addition to arguing that Crum was a principal offender, the State contended at trial that Crum is also guilty under a theory of complicity.  As we have observed, "[t]he complicity statute does not require the state to charge the defendant with complicity."  *State v. Whitehead,* 2022-Ohio-479, ¶ 82 (4th Dist.).  "Instead, R.C. 2923.03(F) allows the state to charge the defendant as a principal offender."  *Id.*  "The statute provides that '[a] charge of complicity may be stated in terms of [the complicity statute], or in terms of the principal offense.' "  *Id.*, quoting R.C. 2923.03(F).

{¶19}  R.C. 2923.03(A)(2) provides, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) [a]id or abet another in committing the offense."  " '[T]o aid or abet is " ' "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment." ' " *Id.* at ¶ 80, quoting *State v. McFarland,* 2020-Ohio-3343, ¶27, quoting *State v. Johnson,* 93 Ohio St.3d 240, 243 (2001), quoting *Black's Law Dictionary* (7th Ed. 1999).  " '[P]articipation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed.' "  *Id.* at 81, quoting *Johnson* at 245, quoting *State v. Pruitt,* 28 Ohio App. 2d 29, 34 (4th Dist. 1971).  "However, ' "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself,

that the accused was an aider and abettor." ' " *Id.* quoting *Johnson* at 243, quoting *State v. Widner*, 69 Ohio Stt.2d 267, 269 (1982).

B.  Analysis

{¶20}  On appeal, Crum disputes only whether the State proved Crum's culpable mental state.  He argues that evidence of the required culpable mental state must be substantial, that the State proffered Young's testimony to prove Crum's mental state, and that cross-examination purportedly showed Young's testimony to not be credible because she testified to benefit her own pending criminal case.  Clearly, Crum does not argue that the State did not prove the other elements of the offense.  The State counters (as it did at trial) that not only was Crum a principal actor, he was also complicit in the offenses committed by the other three occupants in the vehicle.

{¶21}  At trial, Young testified that Crum was her long-time boyfriend, and that she met Maynard and Collins through Crum.  Crum knew Maynard and Collins "through school."  Young was candid at trial about her and Crum's drug use.  She stated neither Crum nor she had jobs, so they were unable to secure drugs to "keep them well," or in drug parlance, keep them from getting sick from drug withdrawal.  When she met up with Maynard and Collins, they promised to provide Crum and her with drugs to "keep them well" in exchange for Young and Crum driving the over three-hour drive from Kentucky to Columbus.  Crum supplied his mother's car, and Young drove because she was the only licensed driver in the group.  Maynard paid for the gas in the car.

{¶22}  When the group got to Columbus, Young dropped Maynard and Collins off at a place that Young knew was a drug house, because she had dropped off people there in the past to obtain drugs.  Crum and Young went on to Young's brother's house

and after a time picked Maynard and Collins back up.  On their way back to Kentucky, the couples stopped in Circleville, and Maynard paid for the room where the group stayed.  At the hotel, Maynard and Collins gave Young and Crum methamphetamine and fentanyl, which the couple used.  Both Young and Crum were doing drugs the night before and morning of the traffic stop.

{¶23}  The State asked Young what was going on inside the car when the group was pulled over.  Young testified that "Justin [Crum] and I are sitting in the front seats, I'm driving.  In the back seat, Colby [Maynard] and [Brittany Collins] are sitting and I hear just a bunch of rustling and I can't really tell what's being said.  Um, I remember asking Justin [Crum], like what did they say?  What's going on back there?  Um, and you know later I found out that it was you know to put things in pants and um try to conceal it.  I don't know if it was switched or whatever but it was, but that's what it was."  In addition, Young had a little bit of methamphetamine she put in the trunk of the car left over from what Maynard and Collins had given her.

{¶24}  On direct and during cross-examination, Young admitted that she lied in several ways to the highway patrol during the traffic stop.  In particular, she stated at trial that she lied to the troopers about the fact the backseat occupants (Maynard and Collins) were moving drugs around in the backseat.  Young acknowledged she had also been charged with the offenses.  During cross-examination, Young was asked if she had met with the State before testifying, and whether she had an agreement with the State.  She was also asked whether she believed her testimony would help her case.  Thus, the evidence at trial showed the jury was aware that Young might receive a benefit for her testimony.   She was also challenged by defense counsel about whether

she was lying at the time of the traffic stop when she said she had no knowledge of anything or lying at the time of trial.

{¶25}  Circumstantial evidence at trial showed Crum was a principal offender in trafficking drugs.  Young and Crum transported Crum's acquaintances Maynard and Collins to a drug house to procure drugs in exchange for drugs to "keep them well." Certainly, Crum was complicit in drug trafficking when he assisted and facilitated the offense by procuring the vehicle to travel for over three hours in exchange for the drugs he used with Young while in the hotel room.

{¶26}  Unlike what Crum contends on appeal, Young's testimony and explanation of the events is not the only evidence of Crum's mental state that he *knowingly* transported a controlled substance when he *knew*, or had *reasonable cause to believe*, that the substance was intended for resale by the offender or another person.  Rather, in addition to Young's testimony, there was circumstantial evidence that showed his mental state.  "[D]rug trafficking may be proven by circumstantial evidence."  *State v. Mobley,* 2023-Ohio-2229, ¶ 26 (9th Dist.), quoting *State v. Lopez-Olmedo,* 2022-Ohio, 2817, ¶ 33.  The direct evidence of mental state is often not available, so proof of the culpable mental state must be derived from circumstantial evidence.  *Id.*, citing *State v. Myers,* 2022-Ohio-991, ¶ 10 (9th Dist.); *State v. Atkinson,* 2020-Ohio-3522, ¶ 26 (9th Dist.).  *See also, State v. Hill,* 2018-Ohio-67, ¶ 32 (4th Dist.) quoting *State v. Woodruff,* 2008-Ohio-967, ¶ 9 (4th Dist.) (" '[a]bsent an admission by a defendant, the state must rely on circumstantial evidence to satisfy the reasonable cause to believe element.' " which applies to both drug trafficking (*Hill*) and receiving stolen property (*Woodruff*)).

{¶27}   In addition to Young's testimony, independent evidence established that Kuehne discovered the vehicle Young was driving was Crum's mother's, so he was the one who both provided the vehicle to transport and was the one who knew Maynard and Collins.  Crum mentioned that the car was his mother's in the back of the cruiser while talking to Young.  Crum himself acknowledged that he was a drug user to Kuehne and in the back of the cruiser.  This, in addition to Kuehne noticing at the time of the stop that Crum was extremely nervous and had sores on his hands, often indicates methamphetamine use.

{¶28}   Further, even if Young were the only witness to testify about Crum's intent, we have observed, " 'Ohio courts have held that the testimony of one witness, if believed by the jury, is enough to support a conviction.' "  *State v. Smith,* 2020-Ohio-5316, ¶ 46 (4th Dist.) quoting *State v. Strong,* 2011-Ohio-1024, ¶ 42. (10th Dist.) citing *State v. Dunn,* 2009-Ohio-1688, ¶ 133 (5th Dist.).  *See also, State v. Mack*, 2018-Ohio-5165, ¶ 15-16, (4th Dist.) citing *State v. Haugh*, 2016-Ohio-8008, ¶ 48 (6th Dist.) (rejecting manifest-weight challenge because the jury was free to assess the credibility of co-defendants and inmates who had a motive to fabricate their testimony); *State v. Rankin*, 2011-Ohio-5131, ¶ 30 (10th Dist.) (evidence not against the manifest weight when jury was aware that a witness for the state had received a plea deal in an unrelated case when the jury was aware she may receive favorable treatment on that case).

{¶29}   We have also held, " '[t]he jury has the benefit of seeing witnesses testify, observing facial expressions and body language, hearing voice inflections, and discerning qualities such as hesitancy, equivocation, and candor.' "  *State v. Myers,*

2025-Ohio-1169, ¶ 59 (4th Dist.), quoting *State v. Gay,* 2024-Ohio-1673, ¶ 45 (4th Dist.), citing *State v. Fell,* 2012-Ohio-616, ¶ 14 (6th Dist.). As to Young's testimony, the trial court gave a detailed instruction to the jury regarding how to determine the credibility of the witnesses. In addition, the trial court complied with R.C. 2923.03(D), the complicity statute, by further instructing the jury in the following way:

> You have heard testimony from Jaime Young, another person who is accused of the same crime charged in this case and is said to be an accomplice. An accomplice is one who knowingly assists another in the commission of a crime. Whether Jaime Young was an accomplice and the weight to give her testimonies [sic] are matters for you to determine from all the facts and circumstances in evidence. The testimony of an accomplice that is supported by other evidence does not become inadmissible because of her complicity, moral turpitude or self-interest. But the admitted or claimed complicity of a witness may affect her credibility and make her testimony subject to great [sic] suspicion and require that it be weighed with great caution. It is for you as jurors in light of all the facts presented to you and from the witness stand to evaluate such testimony and determine its quality and worth or its lack of quality and worth.

{¶30} For these reasons, we hold that the jury did not clearly lose its way. The circumstantial evidence and Crum's behavior at the traffic stop corroborate Young's testimony. In addition, the jury is in the best position to determine credibility. This is especially true because the trial court gave the jury instructions regarding witness credibility as well as the complicity instruction in accord with R.C. 2923.03(D).

{¶31} Further, the record shows that through cross-examination, the jury was aware of Young's pending charges and motivation to lie for her own benefit. "The fact that the testimony of a co-defendant constituted the primary evidence against appellant does not, standing alone, render appellant's convictions against the manifest weight of the evidence." *State v. Johnson,* 2024-Ohio-2058, ¶ 20 (4th Dist.). *See, e.g., State v. Williams,* 2023-Ohio-2296, ¶ 94 (8th Dist.) (co-defendant's testimony was not "unworthy

of belief" simply because of involvement in offense, when jury knew of co-defendant charges, defense counsel fully cross-examined co-defendant about motivation to testify, and trial court gave the jury accomplice instructions); *State v. Person,* 2017-Ohio-2738, ¶ 51-53 (10th Dist.) (evidence was not against manifest weight when primary evidence consisted of three co-defendants' testimony where jury was made aware of plea agreements, defense counsel cross-examined co-defendants about their motivations, and trial court gave cautionary instruction regarding testimony of an alleged accomplice). This is true particularly when the jury is aware of the co-defendant's involvement in the offense, the co-defendant's cooperation for possible leniency, and her attempt to minimize her role in the offense. *See State v. Berry*, 2011-Ohio-6452, ¶ 18 (10th Dist.). Young's testimony was not so incredible as to render appellant's convictions against the manifest weight of evidence.

CONCLUSION

{¶32} Having overruled Crum's sole assignment of error, we affirm the trial court's nunc pro tunc judgment entry of conviction.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J., and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**